IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ANTHONY J. COKLEY,

    Plaintiff,

v.                                           CASE NO. 4:15-cv-623-MW-GRJ

SANTIAGO, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on ECF No. 39, Plaintiff's Motion for

Summary Judgment, and ECF No. 40, Defendants Dr. Kalem Santiago,

Lurline Callaghan, and Heather Horton's Response to Plaintiff's Motion for

Summary Judgment (Doc. 39), Cross-Motion for Summary Judgment, and

Memorandum in Support. Plaintiff has filed a response in opposition to

Defendants' cross-motion for summary judgment, and Defendants have

filed a reply. (ECF Nos. 49, 53.) The motions are, therefore, ripe for review.

For the reasons explained below, the Court recommends that Plaintiff's

motion for summary judgment be denied and Defendants' cross-motion for

summary judgment be granted.

# I.  INTRODUCTION

Plaintiff, an inmate in the custody of the Florida Department of Corrections ("FDOC"), is proceeding *pro se* pursuant to 42 U.S.C. § 1983. (ECF No. 13 ("Compl.").) Plaintiff's claims against Defendants center around an incident that occurred at Madison Correctional Institution ("Madison CI") while Plaintiff was incarcerated there. (Compl. at 5.) Plaintiff argues that Defendants violated his Eighth Amendment rights by exhibiting deliberate indifference in treating Plaintiff following an attack by two other inmates. (*Id.* at 5–8.) Defendants Callaghan and Horton are nurses at the prison and Dr. Santiago is a medical doctor at the prison.

Plaintiff filed a motion for summary judgment, arguing that the facts support his conclusion that Defendants were deliberately indifferent to his serious medical needs. (ECF No. 39.) Plaintiff argues that Defendants knew of his serious medical needs yet failed to treat him, and as a result his facial bone healed in a disfigured manner, leaving Plaintiff permanently disfigured. (*Id.*)

In support of Plaintiff's motion, he submitted Callaghan's responses to his first set of interrogatories (ECF No. 39 at 30–33 ("Callaghan Inter.")); Horton's responses to his first set of interrogatories (*Id.* at 34–37 ("Horton

Inter.")); Dr. Santiago's responses to his first set of interrogatories (*Id.* at 38–44 ("Santiago Inter.")); Plaintiff's medical records (*Id.* at 46–53, 57–92); Plaintiff's inmate requests and letters to senators (*Id.* at 93–96); and Plaintiff's inmate grievances and responses (*Id.* at 98–107).

In response to Plaintiff's motion for summary judgment, and in support of their cross-motion for summary judgment (ECF No. 40) Defendants state that Plaintiff failed to show Defendants were deliberately indifferent. (*Id.* at 2.) While Defendants do not now dispute that Plaintiff had an objectively serious medical need, Defendants assert that they were not deliberately indifferent and that any delay in treatment did not cause Plaintiff any harm. (*Id.*)

In support of their cross-motion, Defendants submitted an affidavit of Dr. Scott Kennedy (ECF No. 40-1 ("Kennedy Aff.")); Plaintiff's medical records (ECF No. 40-2); an affidavit of Dr. Santiago (ECF No. 40-3 ("Santiago Aff.")); an affidavit of Callaghan (ECF No. 40-4 ("Callaghan Aff.")); and an affidavit of Horton (ECF No. 40-5 ("Horton Aff.")).

In his response in opposition to Defendants' cross-motion for summary judgment (ECF No. 49) Plaintiff asserts that the delay in receiving x-rays of his face and Defendants failure to respond reasonably

caused him to suffer an unnecessary and wanton infliction of pain. (*Id.*) Plaintiff also attacks the credibility of Defendants as a way of arguing that his version of the facts is accurate. (*Id.*) Plaintiff attached to his response portions of the interrogatory responses from Defendants (*Id.* at 22–28); Plaintiff's medical records (*Id.* at 30–65, 71); inmate requests and grievances as well as responses (*Id.* at 66–70, 73–74, 93–101); Plaintiff's sworn affidavit (*Id.* at 76–82 ("Pl. Aff.")); and an administrative complaint against Horton and the Board of Nursing's order regarding that complaint (*Id.* at 85–91).

In Defendants reply to Plaintiff's response (ECF No. 53) Defendants refute Plaintiff's claims regarding the timing of his complaints of facial pain, the reasons he was denied surgery, his assertion that Callaghan failed to record and treat his injuries, and his attacks on Defendants' credibility.[1]

---

[1] Plaintiff makes a variety of claims to diminish Defendants' credibility, but Defendants refute each claim. One such claim against Horton's credibility involves Horton's interrogatory response stating that she recalls Plaintiff complaining of facial pain. Horton, however, clarified that she was referring to a complaint of facial pain days after her initial visit with Plaintiff. (ECF No. 53 at 4; Horton Aff. 2.) Thus, the fact that she stated that she recalls his complaint of facial pain does not contradict her statement that he did not complain of facial pain during Horton's treatment of his injuries.

Plaintiff's claim against Callaghan's credibility involves Callaghan's response to the interrogatory about discipline for her practice. Callaghan stated that she had not been disciplined, which Plaintiff construes as perjury. Callaghan's discipline, however, involved leaving a shift early and not her "practice," namely treating patients. (ECF No. 53.) Thus, her interrogatory was not incorrect based on Plaintiff's specific question.

Plaintiff attacks Dr. Santiago's credibility by stating that Dr. Santiago allegedly

(*Id.*) Defendants also attached to their reply a second affidavit of Horton to clarify potential confusion arising from her interrogatory response regarding the timing of Plaintiff's complaints of facial pain. (ECF No. 53-1 ("Horton Aff. 2")).

## II.  EVIDENCE

Plaintiff previously was incarcerated at Madison CI.[2] On February 23, 2015, two inmates attacked Plaintiff.[3] Plaintiff was then handcuffed and taken to confinement. Nurses Callaghan and Horton came to Plaintiff's cell to treat Plaintiff. Plaintiff complained of re-aggravating a previous knee injury, but he did not complain of any broken bone in his face. Callaghan examined Plaintiff and documented lacerations to his head and an abrasion to his right shin. These lacerations were small and shallow, so

---

said she prescribed Plaintiff muscle rub, Tylenol, and Motrin. (ECF No. 49 at 26.) Dr. Santiago, however, actually stated that she ordered Plaintiff muscle rub and that he "was also given Tylenol and ibuprofen and prescribed Motrin." (ECF No. 53 at 6–7; Santiago Inter.) The fact that Plaintiff misconstrued her response does not make her less credible.

[2] Although Plaintiff was incarcerated at Madison CI at the time of the alleged incident, he is currently incarcerated at Gulf Correctional Institute. (Compl.)

[3] Plaintiff alleges that he was hit with a combination lock and stabbed with a knife. A responding officer stated that he observed Plaintiff and another inmate hitting each other in the facial and upper torso areas with clenched fists. (ECF No. 39 at 99.) Plaintiff states that the inmate with the knife handed off the weapon and that the inmate with the lock was not apprehended. (Compl. at 5.) Accordingly, there is not a clear account apart from Plaintiff's statements of what exactly caused his injuries.

they did not require emergency treatment. Callaghan then treated his wounds with antibiotics and Steri Strips, and she provided Tylenol for his knee pain. Callaghan also made an appointment for Plaintiff to see Dr. Santiago for an x-ray of his knee. Nurses Callaghan and Horton stated that they followed the standard of care at all times in treating Plaintiff. (ECF No. 40 at 5–6; ECF No. 39 at 46–48; Callaghan Aff. at 3–5; Horton Aff. at 2–3; Callaghan Inter. at 2–4; Horton Inter. at 2–4; Kennedy Aff. at 2–3.)

During this visit with Plaintiff, Callaghan took the lead because she was more experienced than Horton. Horton, as a secondary nurse, opened packaging and handed tape to Callaghan while she was bandaging Plaintiff's wounds. Horton was not involved in Plaintiff's care in any other way. (ECF No. 40 at 5–6; Horton Aff. at 2–3.)

Dr. Santiago saw Plaintiff on February 25, 2015.[4] During this visit, Plaintiff complained only of knee and rib pain, not of any facial fracture. Dr. Santiago examined Plaintiff and noted the treatment of Plaintiff's wounds as well as swelling in Plaintiff's knees and tenderness on medial parts. She also noted that Plaintiff had limited movement due to pain. As part of

---

[4] The medical records evidence that this appointment was on February 25, 2015; however, according to Plaintiff this actually occurred on February 24, 2015. (ECF No. 39 at 9.) The date used in this Report and Recommendation will be February 25, 2015, in accordance with the medical records.

treatment, Dr. Santiago ordered x-rays of Plaintiff's left ribs and both knees. She also provided Plaintiff with muscle rub. The x-rays, taken on March 3, 2015, revealed no fractures. Dr. Santiago asserts that she followed the standard of care at all times in treating Plaintiff. (ECF No. 40 at 6; ECF No. 39 at 49, 57, 59–60, 63; Santiago Aff. at 3–4; Santiago Inter. at 2, 5; Kennedy Aff. at 2–4.)

On March 4, 2015, for the first time, Plaintiff submitted a sick call request stating that he could feel broken bones in his face. Plaintiff stated that he could not feel the broken bones until that time because of swelling in his face. A nurse—not Dr. Santiago—reviewed this sick call request and scheduled Plaintiff an appointment with a doctor. Dr. Santiago then saw Plaintiff on March 10, 2015. At this time, Plaintiff complained of facial pain and right knee pain. Dr. Santiago then examined Plaintiff, including the area of his face where he complained of pain, noting that there was no facial swelling, deformities, tenderness, redness, or limited movement of the face. Dr. Santiago determined that Plaintiff's knee pain had improved and that Plaintiff had no signs of facial trauma. As a result of the examination, Dr. Santiago determined that Plaintiff did not have any broken bones in his face. (ECF No. 40 at 6–7; ECF No. 39 at 58, 62, 68; Santiago

Aff. at 3, 5–6; Santiago Inter. at 5; Kennedy Aff. at 4–5; ECF No. 53 at 7–8.)

A nurse examined Plaintiff two days later on March 12, 2015. The examination did not reveal any swelling in Plaintiff's face. Although Plaintiff complained again of head pain, the nurse stated that there were no injuries noted. She then advised Plaintiff to return to medical as needed.

Then, on March 17, 2015, a doctor (other than Dr. Santiago) saw Plaintiff and ordered x-rays of his face and skull. The face x-rays revealed possible fractures in Plaintiff's left zygomatic arch and the mandible. The x-ray of Plaintiff's skull did not show evidence of acute bony or soft tissue injury to the skull or visualized parts of the face. Accordingly, the radiologist recommended a CT scan of Plaintiff's facial bones to confirm any possible fractures. (ECF No. 40 at 8; ECF No. 39 at 50–52, 65–66, 69; Santiago Aff. at 6–7; Kennedy Aff. at 5–6.)

Dr. Santiago saw Plaintiff on March 25, 2015, to discuss the x-ray results. Plaintiff denied facial pain during this visit, and Dr. Santiago again noted no facial swelling, discoloration, or limited face movement. Dr. Santiago determined that Plaintiff's fracture was not serious because he had normal facial form, sensory nerve function, globe position, and

masticatory function. Yet based on the radiologist's recommendation, Dr. Santiago submitted a consultation request for Plaintiff to have a CT scan of his facial bones. Dr. Santiago had no additional involvement in Plaintiff's treatment after this visit. (ECF No. 40 at 8–9; ECF No. 39 at 53, 71–72; Santiago Aff. at 7; Santiago Inter. at 4–5; Kennedy Aff. at 6.)

Plaintiff had a CT scan on March 27, 2015. The CT scan revealed a mildly displaced segmental fracture of Plaintiff's left zygomatic arch and a 2.5 mm depression of the distal fracture site. Everything else on the CT scan was normal.  (ECF No. 40 at 9–10; ECF No. 39 at 74; Kennedy Aff. at 7.)

Surgical intervention for this type of fracture is contingent upon the severity of the displacement. Typically, however, after three weeks following the injury, surgery becomes an elective cosmetic procedure because the bones have already started to heal together. Although more than three weeks had elapsed since Plaintiff's injury, Plaintiff would not have received surgery regardless of the timing because his displacement was not significant enough to warrant it. (ECF No. 40 at 9–11; Kennedy Aff. at 3, 7–9.)

Notably, Plaintiff's fracture did not cause any functional impairment.

Additionally, the risks of the surgery include nerve damage, chronic pain, and others.

On May 6, 2015, Plaintiff visited Dr. Render. His examination revealed a "minimal depression" of the left zygomatic arch.  Plaintiff did not exhibit any tenderness, and he was able to easily open his mouth without restriction. Plaintiff, however, stated that he did not want the depression on his face permanently, so Dr. Render submitted a consultation request for a zygomatic arch osteotomy and realignment. (ECF No. 40 at 11; ECF No. 39 at 76–77; Kennedy Aff. at 3, 9.)

Dr. Kennedy, however, submitted an Alternative Treatment Plan on May 7, 2015, as Plaintiff's condition was nothing more than cosmetic. Accordingly, Dr. Kennedy stated that no surgery was indicated at that time. Further, Plaintiff could perform all of his activities of daily living, and he did not have any difficulty opening or closing his mouth. (ECF No. 40 at 11–12; ECF No. 39 at 77; Kennedy Aff. at 3, 9.)

Plaintiff's version of events differs from the version stated above. According to Plaintiff, when Nurses Callaghan and Horton came to treat him following his attack, Plaintiff informed them that inmates had beaten him with a combination lock and stabbed him with a knife. Both Defendants

then ignored Plaintiff's statements and did not treat or record his injuries as knife wounds, including the stab wound on his right arm. Defendants also failed to examine the left side of Plaintiff's face despite his complaints of severe pain. According to Plaintiff, Callaghan even erroneously stated that Plaintiff did not complain of face pain and that there was no evidence of a fracture. Horton, on the other hand, stated that she did recall Plaintiff complaining of face pain. (Compl. at 5; ECF No. 39 at 3–6; Pl. Aff. at 1.)

Then, on February 24, 2015, Dr. Santiago saw Plaintiff, and Plaintiff stated that he told Dr. Santiago that he was in extreme pain, including on the left side of his face, and that he had been struck in the face with a combination lock. Although Dr. Santiago ordered x-rays of his knees and ribs, Dr. Santiago did not physically examine Plaintiff's wounds or injuries. In fact, according to Plaintiff, Dr. Santiago remained seated during the entire visit. Plaintiff was later examined by a nurse who discovered a small indentation on Plaintiff's left cheek bone and scheduled Plaintiff to see a doctor. Dr. Santiago saw Plaintiff again on March 10, 2015, and Plaintiff informed Dr. Santiago that his face felt broken and that he was experiencing dizziness and blackouts. Dr. Santiago, however, responded that nothing was wrong with Plaintiff or his face and did not examine him,

again remaining seated throughout the visit. Plaintiff was then escorted from medical without receiving any treatment. (Compl. at 5–6; ECF No. 39 at 7–8; Pl. Aff. at 1–3.)

Plaintiff did not have x-rays of his face until March 17, 2015, and Dr. Santiago saw him again on March 25, 2015. During this visit, Dr. Santiago informed Plaintiff that he had a fractured cheek bone, and Plaintiff signed a consent form to have a CT scan of his face. As of the date of his complaint, however, Plaintiff had not received any physical treatment for his serious medical need. (Compl. at 7; ECF No. 39 at 9–10; Pl. Aff. at 4.)

Plaintiff asserts that because of the delay in treatment, he was informed that his face healed in a deformed manner and that he will always have a dent on the left side of his face. Therefore, surgery was requested, but Plaintiff was denied treatment because it was cosmetic. According to Plaintiff, he never would have needed a cosmetic surgery had he received proper medical treatment from the start. (Compl. at 7; ECF No. 39 at 11; Pl. Aff. 5–6.)

## III.  SUMMARY JUDGEMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), the entry of summary judgment is appropriate when the Court is satisfied that "there is no genuine dispute as to any material fact and the movant is entitled to a

judgment as a matter of law." In applying this standard, the Court must

examine the pleadings, depositions, answers to interrogatories, and

admissions on file, together with any affidavits and other evidence in the

record "in the light most favorable to the nonmoving party." *Samples on*

*Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988).

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317

(1986), the moving party bears the initial burden of establishing the

nonexistence of a triable issue of fact. If the movant is successful on this

score, the burden of production shifts to the non-moving party who must

then come forward with "sufficient evidence of every element that he or she

must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987).

The non-moving party may not simply rest on the pleadings, but must

use affidavits, depositions, answers to interrogatories, or other admissible

evidence to demonstrate that a material fact issue remains to be tried. *See*

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v.*

*Goldome Credit Corp.*, 408 F.3d 773, 785–86 (11th Cir. 2005).

> In civil actions filed by inmates, federal courts must distinguish
> between evidence of disputed facts and disputed matters of
> professional judgment. In respect to the latter, our inferences
> must accord deference to the views of prison authorities.
> Unless a prisoner can point to sufficient evidence regarding

> such issues of judgment to allow him to prevail on the merits,
> he cannot prevail at the summary judgement stage.

*Beard v. Banks,* 548 U.S. 521, 530 (2006). Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *See, e.g., Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

The Court must view the evidence and inferences drawn from the underlying facts in the light most favorable to the non-movant. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). But, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) (internal quotations and citations omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986) (stating that to defeat summary judgment "there must be evidence on which the jury could reasonably find for the plaintiff"). "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." *Brown v. City of Clewiston,* 848 F.2d 1534, 1540 n. 12 (11th Cir.1988) ("The

summary judgment standard requires that we resolve all reasonable doubts in favor of the non-moving party, but it does not require us to resolve all doubts in such a manner.").

## IV.  DISCUSSION

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical need. (Compl.) Defendants admit that Plaintiff had a serious medical need but state that they were not deliberately indifferent and that any delay in treatment failed to cause harm to Plaintiff. (ECF No. 40.) Defendants contend that because Plaintiff cannot demonstrate that they were deliberately indifferent to his medical needs in violation of the Eighth Amendment with regard to the treatment of his injuries, they are entitled to summary judgment. (*Id.*) After reviewing the record, the Court agrees with Defendants.

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment prohibition against cruel and unusual punishment. To establish an Eighth Amendment violation stemming from the deprivation of medical attention, the prisoner must set forth evidence of an objectively serious medical need and prove that the officials acted with

attitudes of deliberate indifference to his needs. *Farrow v. West*, 320 F.3d

1235, 1243 (11th Cir. 2003).

A claim that a prisoner has been deprived of medical attention

requires that the prisoner demonstrate "an objectively serious medical

need," which is one that is (1) so grave that, "if left unattended, poses a

substantial risk of serious harm," and (2) that the officials' response was so

inadequate as to "constitute an unnecessary and wanton infliction of pain,"

and was not "merely accidental inadequacy, negligence in diagnosis or

treatment, or even medical malpractice actionable under state law." *Taylor

v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). "It is obduracy and

wantonness, not inadvertence or error in good faith, that characterize the

conduct prohibited by the Cruel and Unusual Punishments Clause . . . ."

*Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Additionally, the Eleventh Circuit has defined a serious medical need

as (1) a "one that has been diagnosed by a physician as mandating

treatment or one that is so obvious that even a lay person would easily

recognize the necessity for a doctor's attention," or (2) one where " a delay

in treating the need worsens the condition." *Mann v. Taser Int'l, Inc.*, 588

F.3d 1291, 1307 (11th Cir. 2009) (quoting *Hill v. Dekalb Reg'l Youth Det.*

*Ctr.*, 40 F.3d 1176, 1187–88 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

Further, a prisoner must demonstrate a "subjective intent to punish," by showing an attitude of "deliberate indifference." *Taylor*, 221 F.3d at 1258 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *see also Taylor*, 221 F.3d at 1257 ("[T]here must be a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish."); *Wilson v. Seiter*, 501 U.S. 294, 300 ("The source of the intent requirement is not the predilections of this Court, but the Eighth Amendment itself, which bans only cruel and unusual *punishment*."). There is no deliberate indifference "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. The Eleventh Circuit has stated elsewhere that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *see also Estelle*, 429 U.S. at 105–06 ("[A] complaint that a physician

has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

In sum, to have a claim for deliberate indifference to a serious medical need, a prisoner must prove four things: "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258. Negligent treatment alone is not enough.

Defendants now concede that Plaintiff had an objectively serious medical need. Defendants argue, however, that Plaintiff has failed to provide evidence showing that Defendants were deliberately indifferent to that serious medical need. (ECF No. 40 at 2.)

## A. Plaintiff has failed to show that Nurses Callaghan and Horton acted with deliberate indifference to his serious medical need.

According to Plaintiff, Nurses Callaghan and Horton failed to provide adequate medical treatment and failed to properly record his injuries, preventing him from receiving future treatment. (Compl. at 8.) More specifically, Plaintiff asserts that they failed to record his wounds as stab

wounds instead of lacerations and abrasions and failed to record his arm wound. (ECF No. 39 at 23.) Additionally, Plaintiff states that they failed to record the incident as assault with weapons, and they failed to treat his facial injury. (*Id.*) Defendants argue that Plaintiff failed to produce any evidence showing that Nurses Callaghan and Horton were deliberately indifferent for failing to properly document his injuries or treat his wounds. (ECF No. 40 at 21.)

The Court concludes that Plaintiff has failed to prove that Defendants acted with an attitude of deliberate indifference or with a subjective intent to punish. Instead, the evidence shows that Defendants acted reasonably. Despite Plaintiff's claims that Nurse Callaghan failed to properly record Plaintiff's injuries, the medical records evidence that Callaghan both wrote down Plaintiff's complaints and diagramed them. (ECF No. 39 at 46–48.) Plaintiff's conclusory allegations regarding Callaghan's conduct, contradicted by the record, are insufficient to prove deliberate indifference.

Further, Plaintiff's claims that Nurse Callaghan failed to document his arm wound[5] or to refer to his injuries as stab wounds rather than

---

[5] The diagram of Plaintiff's injuries discloses a wound to Plaintiff's right arm. (ECF No. 39 at 46–48.)

lacerations, even if true, constitutes at most medical negligence or malpractice. Neither negligence nor malpractice are Eighth Amendment violations. *Estelle*, 429 U.S. at 106.

With regard to Plaintiff's treatment, because Nurse Callaghan did not know of or infer any serious risk regarding a facial injury, Callaghan cannot now be found deliberately indifferent in failing to treat that injury. *Farmer*, 511 U.S. at 837. Callaghan cleaned Plaintiff's visible wounds and applied antibiotic ointment and Steri Strips. (ECF No. 40 at 5–6; ECF No. 39 at 46–48; Callaghan Aff. at 3–5; Horton Aff. at 2–3; Callaghan Inter. at 2–4; Horton Inter. at 2–4; Kennedy Aff. at 2–3.) Callaghan also scheduled Plaintiff an appointment with Dr. Santiago for an x-ray of his right knee and gave him Tylenol because Plaintiff complained of right-knee pain. (ECF No. 39 at 46–48; Callaghan Aff. at 3–5; ECF No. 40 at 5–6.) Callaghan believed that the extent of Plaintiff's injuries consisted only of small lacerations and a re-aggravation of a previous knee injury. (Callaghan Aff. at 4–5.) That was the extent of Nurse Callaghan's subjective knowledge.

Accordingly, Nurse Callaghan treated or addressed all of the injuries Plaintiff complained of after the incident. Notably, Plaintiff did not complain at that time of face pain, and Callaghan did not observe any obvious

fractures or facial swelling.  (Callaghan Aff. at 3–5.) Callaghan even specifically stated that "there was no evidence of injury indicative of a fracture." (Callaghan Inter. at 4.) It follows that Nurse Callaghan was not required to treat the left side of Plaintiff's face and she cannot now be considered deliberately indifferent for failing to treat a facial fracture of which she had not notice nor any symptoms disclosing a facial fracture.

Plaintiff has failed to prove that Nurse Callaghan had subjective knowledge of a serious risk of harm and subsequently disregarded that risk by anything more than negligence. *See McElligott*, 182 F.3d at 1255. To the extent that Plaintiff attempts to argue that Nurse Callaghan should have been aware of his facial fracture, this would at most constitute negligence, which does not rise to a violation of the Eighth Amendment.

The same reasoning applies to Plaintiff's failure to prove that Nurse Horton was deliberately indifferent to his serious medical need. Plaintiff has failed to prove that Nurse Horton had subjective knowledge of a serious risk of harm and subsequently disregarded that risk by anything more than negligence.

Although Plaintiff asserts that Nurse Horton knew of Plaintiff's severe pain on the left side of his face based on her interrogatory response, this is

not entirely accurate. Nurse Horton's response to the first interrogatory stated that "she recall[ed] Plaintiff stating his face hurt but he did not mention a broken bone." (Horton Inter. at 4.) In clarifying this statement, Horton noted that Plaintiff did not specify any particular date in his interrogatory. (Horton Aff. 2 at 2.) She went on to state, "He made absolutely no complaints of pain that day to me and Nurse Callaghan. He complained of pain days afterward, the evening before he was due to see Dr. Santiago for his follow up appointment. The night of the assault the only complaint he made was about his knee." (*Id.*) Thus, her statement in her first interrogatory responses was in reference to a later complaint of pain. Nurse Horton's statements are in accord with the statements made by Callaghan and with the medical records. The only statement to the contrary is Plaintiff's self serving and unsupported statement, which fails to prove Horton's subjective knowledge and her subsequent disregard of it, as required for a deliberate indifference claim.

Additionally, as with Nurse Callaghan, to the extent that Plaintiff attempts to prove that Nurse Horton should have known of his facial fracture or done more to discover it, such a claim would at most constitute medical negligence or malpractice only, which is insufficient to prove that

Horton acted with deliberate indifference in treating Plaintiff. Notably, Nurse Horton's role in Plaintiff's treatment was even more limited from the treatment provided by Nurse Callaghan. Horton only opened packaging and handed tape to Callaghan while she treated Plaintiff's wounds. Absent proof of any obvious swelling in Plaintiff's face or any complaints of facial pain, Nurse Horton had no reason to know that Plaintiff had a facial fracture that she should have treated. (Horton Aff. at 2–3.)

To the extent that Plaintiff alleges that Nurse Callaghan and Horton's delay in treatment constitutes deliberate indifference, Plaintiff fails to prove the necessary elements. When an inmate complains specifically of a delay in medical treatment, he must provide "medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed" in proving a constitutional violation. *Hill*, 40 F.3d at 1188. Plaintiff has failed to provide medical evidence to establish any detrimental effect in a delay in treatment.

Nurses Callaghan and Horton scheduled an appointment for Plaintiff to meet with Dr. Santiago the following day, and their role in Plaintiff's treatment ended after the initial visit. Nothing they did or did not do caused Plaintiff any harm; he was referred to a provider to be seen the next day,

which would have occurred even if they had documented complaints of facial pain—assuming Plaintiff had made such complaints. (ECF No. 53 at 3.) In short, there is no evidence that Nurses Callaghan and Horton delayed their treatment of Plaintiff nor any evidence that there was a detrimental effect from any delay in treatment.

Plaintiff asserts that "Callaghan and Horton were motivated by evil intent to cover up assault with weapons and unnecessary use of chemical force by officer whose actions caused Plaintiff to be stabbed multiple times." (ECF No. 39 at 19.) Such a conclusory allegation, is whooly insufficient to prove any "evil intent" by Nurses Callaghan and Horton. Accordingly, at worst Nurses Callaghan and Horton's conduct might have been negligent for failing to examine further, but even if true, is conduct which does not rise to the level of deliberate indifference to support a claim for violation of the Eighth Amendment.

Plaintiff has provided no evidence to the contrary regarding these Defendants apart from his own statements, which are unsupported by the record. Thus, Plaintiff has failed to prove the subjective knowledge requirement necessary to prove deliberate indifference. Because Plaintiff has failed to show that Defendants were aware of or should have been

aware of a more serious and urgent need, Plaintiff has failed to establish that Defendants acted with deliberate indifference in violation of the Eighth Amendment.

## B. Plaintiff has failed to show that Defendant Dr. Santiago acted with deliberate indifference to Plaintiff's serious medical need.

According to Plaintiff, Dr. Santiago acted with deliberate indifference by denying or refusing to treat Plaintiff's facial fracture, which resulted in Plaintiff's the permanent disfigurement of Plaintiff's face. (Compl. at 8.) Specifically, Plaintiff asserts that Dr. Santiago denied, delayed, and refused to provide Plaintiff medical treatment despite his obvious medical need. (ECF No. 39 at 23.) Additionally, Plaintiff states that Dr. Santiago deliberately misdiagnosed Plaintiff's injuries because she did not physically examine Plaintiff, thus failing to provide Plaintiff with adequate medical treatment. (*Id.*)

Defendants argue that Plaintiff failed to produce any evidence showing that Dr. Santiago was deliberately indifferent because there is no evidence that she had subjective knowledge of a serious risk of harm and disregarded that risk. (ECF No. 40 at 24.)

The Court agrees that Plaintiff has failed to prove that Dr. Santiago possessed subjective knowledge of a serious risk of harm to Plaintiff and

disregarded that risk. When Dr. Santiago first examined Plaintiff on

February 25, 2015, Plaintiff only complained of knee and rib pain. (ECF No.

39 at 49, 57, 59–60, 63; Santiago Aff. at 3–4.) Dr. Santiago examined

Plaintiff at that visit and ordered x-rays for his knees and ribs to address

his complaints. (ECF No. 39 at 49, 57, 59–60, 63; Santiago Aff. at 3–4.)

Plaintiff did not complain of face pain during this visit, and Dr. Santiago did

not observe any swelling or fracture. (ECF No. 40 at 6; ECF No. 39 at 49,

57, 59–60, 63; Santiago Aff. at 3–4; Santiago Inter. At 2, 5; Kennedy Aff. at

2–4.) Thus, there is no genuine dispute that Dr. Santiago did not have

subjective knowledge necessary to prove deliberate indifference.

When Dr. Santiago saw Plaintiff on March 10, 2015, he did complain

of facial pain. (ECF No. 40 at 6–7; ECF No. 39 at 58, 62, 68; Santiago Aff.

at 3, 5–6.) In response, Dr. Santiago examined Plaintiff, which examination

did not reveal facial trauma or facial swelling that would evince a facial

fracture. (ECF No. 40 at 6–7; ECF No. 39 at 58, 62, 68; Santiago Aff. at 3,

5–6.) Because Dr. Santiago had no evidence of a facial fracture, she did

not order an x-ray of Plaintiff's face at that time. (Santiago Aff. at 3, 5–6.)

Later, however, when Dr. Santiago was made aware of x-ray results

revealing a potential fracture, she immediately recommended a CT scan to

confirm Plaintiff's injuries in accordance with the radiologist's suggestion.

(Santiago Aff. at 7; ECF No. 40 at 8–9; ECF No. 39 at 53, 71–72.)

Because Dr. Santiago did not have subjective knowledge of Plaintiff's serious medical need, she cannot be deliberately indifferent for failing to order x-rays of Plaintiff's face earlier or for failing to prescribe him pain medication. Additionally, even if Dr. Santiago should have diagnosed Plaintiff's facial fracture sooner and treated him accordingly, Dr. Santiago's failure to treat Plaintiff sooner at most would evidence medical negligence or malpractice—both insufficient to constitute deliberate indifference. *Estelle*, 429 U.S. at 105–106. "[W]hether an X-ray—or additional diagnostic techniques or forms of treatment—is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measure, does not represent cruel and unusual punishment." *Id.* at 107.

To the extent that Plaintiff alleges that Dr. Santiago's delay in treatment constitutes deliberate indifference, Plaintiff has failed to prove on this record the necessary elements. When an inmate complains specifically of a delay in medical treatment, he must provide "medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed" in proving a constitutional violation. *Hill*, 40 F.3d at 1188. Plaintiff has not provided any medical evidence to establish any detrimental effect

in the delay in his treatment.

Despite Plaintiff's allegations that his face healed incorrectly as a result of the delay in treatment, the record does not support this conclusion. Rather, the evidence demonstrates that because Plaintiff's fracture was not significantly displaced, it did not require surgery. (Kennedy Aff. at 3, 9.) Although surgery was not indicated until three weeks post-injury, this did not change the result because even if Plaintiff's injury was revealed sooner, surgery would not have been necessary at that time either. (*Id.*)

Additionally, neither Plaintiff's physical functionality nor his ability to continue his activities of daily living suffered because of the delay. (ECF No. 40 at 11–12; ECF no. 39 at 77; Kennedy Aff. at 3, 9.) As a result, any surgery to treat Plaintiff's fracture is only cosmetic. (ECF No. 39 at 77; Kennedy Aff. at 3, 9.) The failure to provide cosmetic surgery does not constitute a detrimental effect resulting from a delay in medical treatment.

Plaintiff also alleges that Dr. Santiago acted with "an evil intent of reprisal which caused her reckless and or callous deliberate indifference toward Plaintiff, constituting an unnecessary and wanton infliction of prolonged pain and suffering." (ECF No. 39 at 12.)  The problem with this claim is that Plaintiff offers nothing more than this conclusory allegation to

support his statement regarding Dr. Santiago's intent.

Although Plaintiff attached grievances he filed against Dr. Santiago, the grievances either were denied or returned without action because Plaintiff failed to follow the proper procedures. (ECF No. 39 at 104–07.) Furthermore, Plaintiff has not submitted any evidence that Dr. Santiago was ever made aware of these grievances against her. In contrast, Dr. Santiago stated that "she does not recall Plaintiff making any previous complaints regarding her medical care." (Santiago Inter. at 7.)

In sum, Plaintiff has failed to prove that Dr. Santiago acted with any "evil intent" or in retaliation, and has failed to show any causal connection between Plaintiff's  grievances and Dr. Santiago's subsequent treatment of his injuries.

Accordingly, there is no genuine dispute that Dr. Santiago did not have subjective knowledge of a serious risk of harm to Plaintiff and subsequently disregarded the known risk.  Rather, at most Plaintiff has raised an issue as to whether Dr. Santiago's treatment of him was negligent. While Dr. Santiago might have done more, the failure to do so does not establish a deliberate indifference claim under the Eighth Amendment for failing to treat Plaintiff or for delaying the treatment of Plaintiff.

# V.  CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment, ECF No. 39, should be **DENIED.**

2. Defendants Dr. Kalem Santiago, Lurline Callaghan, and Heather Horton's Cross-Motion for Summary Judgment, ECF No. 40, should be **GRANTED.**

**IN CHAMBERS** this 8th  day of February 2017.


*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**